# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **WILLARD EARL BOHANNON,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **No. 08-2220-STA** |
| **BAPTIST MEMORIAL** ) | |
| **HOSPITAL-TIPTON and** ) | |
| **BAPTIST MEMORIAL HEALTH** ) | |
| **CARE CORPORATION;** ) | |
| ) | |
|     **Defendants.** ) | |

## ORDER DENYING DEFENDANT BAPTIST MEMORIAL HEALTHCARE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Baptist Memorial Health Care Corporation's ("BMHCC") Motion for Summary Judgment (D.E. # 65) filed on October 30, 2009. Plaintiff Willard Earl Bohannon filed a Response in opposition (D.E. # 76) to Defendant's Motion on December 9, 2009. Defendant has filed a reply brief in this matter (D.E. # 83). For the reasons set forth below, Defendant's Motion is **DENIED**.

## BACKGROUND

As an initial matter, the Court notes that Plaintiff has provided a statement of additional facts with his response to Defendant's Motion. Plaintiff incorporates this statement of facts by reference in each of his disputed responses to Defendant's Statement of Facts. For instance, the Plaintiff directs the Court to see paragraphs twelve through forty-three of his additional statement of facts to each of his disputed responses. The Court notes that such a practice is

1

unresponsive and unhelpful to the Court.  Additionally, neither the Federal Rules of Civil Procedure or the Local Rules contemplate that a non-moving party will provide an additional statement of facts.

In response to Plaintiff's statement of facts, Defendant included a response in its reply brief.  Since Plaintiff's statement of additional facts is not provided for under either the Federal Rules of Civil Procedure or the Local Rules the Court will only consider them to the extent they are relevant and material to the instant Motion.

For purposes of this motion the following facts are undisputed unless otherwise noted. BMHCC is a Tennessee non-profit corporation and has its own Federal Employer Identification Number for federal tax purposes.  Def.'s Statement of Undisputed Facts ¶ 1.  BMHCC is the functional parent corporation in a family of related organizations.  *Id.*  This family of related organizations includes a number of subsidiaries that operate hospital facilities; one such subsidiary is Baptist Tipton.  *Id.* at ¶ 2.  Baptist Tipton was incorporated as a Tennessee non-profit corporation on October 15, 1980, and it operates an acute care hospital in Covington, Tennessee as a free standing business operation, functioning with its own administrator, managers, and its own finance and human resource functions.  *Id.* at ¶ 3.

The Defendant alleges that BMHCC provides its family of subsidiaries with certain support services.  *Id.* at ¶ 4.  For example, BMHCC provides support in the areas of audit, legal, regulatory compliance and information systems.  *Id.*  Each subsidiary, however, maintains its own finance and human resources functions.  *Id.*  Plaintiff contends that Defendant mischaracterizes the nature of services it provides to its subsidiaries.  Plaintiff contends Defendant's services are more aptly described as "supervisory" or "oversight services."

Defendant asserts that each separate hospital facility, including Baptist Tipton, is responsible for hiring its own employees, managing its own human resources, and directing day to day activities of its staff in compliance with its operating policies and procedures. *Id*. at ¶ 5. Plaintiff disputes this fact and contends that Defendant ignores the fact that the operating policies and procedures under which the hospital facilities operate were developed by BMHCC, that BMHCC deems employees of the hospital facilities to be employees of BMHCC for such purposes as training, provision of employee benefits and employee recruitment, and that the operations of the facilities and BMHCC are highly integrated.

Defendant further contends that Baptist Tipton has and exercises independent authority to hire its own employees, enforce its own policies and rules, and administer its own discipline. *Id*. at ¶ 6. Plaintiff, however, notes that Baptist Tipton does not have "independent" authority to enforce its "own" rules and policies. Its rules and policies are the rules and policies formulated by BMHCC for the purpose of integrating activities throughout the BMHCC system. All final decisions regarding human resources issues such as hiring, discipline and whether termination is warranted are made by Baptist Tipton's management personnel. *Id*. at ¶ 7. Plaintiff disputes this fact and asserts that Defendant ignores BMHCC's significant advisory or supervisory role in the employee discipline and termination process.

Baptist Tipton initially hired Plaintiff as a full time paramedic on August 18, 1988. *Id*. at ¶ 8. Plaintiff does not dispute that he was hired on August 18, 1988 but contends that he also had an employment relationship with BMHCC as well when he became eligible for employee benefits and agreed to abide by BMHCC standards of conduct. On or about April 9-10, 2007, Chuck McGlasson made the decision to terminate Plaintiff's employment. *Id*. at ¶ 9. Chuck

3

McGlasson was an employee of Baptist Tipton and was serving as Interim Director of the Ambulance Service Department and acting in his capacity as Chief Nursing Officer of Baptist Tipton.  *Id*. at ¶ 11.  Plaintiff contends that McGlasson was also an employee of BMHCC at the time of his termination.

Plaintiff was terminated on April 11, 2007.  *Id*.  Plaintiff notes that he was only terminated after David Rhea in BMHCC's human resources department reviewed and approved McGlasson's decision.  The termination decision was also reviewed and affirmed by Paul Betz, the CEO and Administrator of Baptist Tipton.  *Id*. at ¶ 10.

In the instant Motion before the Court, the Defendant contends that it is not the Plaintiff's employer and thus can not be found liable for any of Plaintiff's claims.  More specifically, the Defendant asserts that while it is the parent corporation of Baptist Tipton, a subsidiary, the two entities are not so integrated as to constitute a "single employer" under the *Armbruster v. Quinn* test.  The Defendant argues that the Plaintiff can not show that BMHCC and Baptist Tipton have (1) interrelated operations, (2) common management, (3) centralized labor relations and (4) common ownership as required by *Armbruster*.

In response in opposition, the Plaintiff contends that he can make such a showing.  For instance, Plaintiff argues that BMHCC and Baptist Tipton have common ownership because BMHCC is the sole owner of Baptist Tipton.  The Plaintiff notes that the entities centralized labor relations are seen in shared employee policies, employee benefits, and legal counsel. Plaintiff contends that the entities have interrelated operations as evidenced by shared marketing.

In its reply brief, the Defendant reiterates that Plaintiff not make the required showing

4

that BMHCC and Baptist Tipton are a "single employer."

## STANDARD OF REVIEW

> Federal Rule of Civil Procedure 56(c) provides that a
>
> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
>
> interrogatories, and admissions on file, together with the affidavits, if any, show that
>
> there is no genuine issue as to any material fact and that the moving party is entitled
>
> to a judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[3]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[1] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3] *Celotex*, 477 U.S. at 324.

[4] *Matsushita*, 475 U.S. at 586.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

one-side that one party must prevail as a matter of law."[6]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]   In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[8]   Finally, the "judge may not make credibility determinations or weigh the evidence."[9]   Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[10]

## **ANALYSIS**

Under the "single employer" or "integrated enterprise" doctrine, two companies may be considered so interrelated that they constitute a single employer.[11]   In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common

---

[6] *Id.* at 251-52 (1989).

[7] *Celotex*, 477 U.S. at 322.

[8] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[9] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[10] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[11] *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).

ownership.[12]  None of these factors is conclusive, and all four need not be met in every case.[13]

Nevertheless, control over labor relations is a central concern.[14]

    *1. Interrelation of Operations*

    The Sixth Circuit has stated that common offices, common record keeping, shared bank

accounts, and equipment constitute interrelation of operations.[15]  In *Armbruster*, the Sixth Circuit

found interrelation of operations where the parent company "handled" the subsidiary's accounts

receivable and its payroll and cash accounting, provided it with administrative backup,

monitored its sales shipments, allowed subsidiary's managerial employees to use its company

credit cards, and housed subsidiary's bank accounts at its headquarters.[16]  In *NLRB v. Palmer*

*Donavin Mfg. Co.*, the Sixth Circuit also found interrelation of operations where the parent and

subsidiary were located in the same building, used the same payroll system, used the same

phones, and were marketed as twins to the public.[17]

    Here, BMHCC and Baptist Tipton are housed in separate office spaces and separate

locations.[18]  Additionally, the entities each have their own finance and human resource

---

    [12] *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983)(overruled on other grounds). *See also*, *Swallows*, 128 F.3d at 994.(same)

    [13] *Swallows*, 128 F.3d at 994.

    [14] *Id.*

    [15] *Id.*

    [16] *Armbruster*, 711 F.2d at 1338.

    [17] *NLRB v. Palmer Donavin Mfg. Co.*, 369 F.3d 954, 957 (6th Cir. 2004).

    [18] Bondurant Aff. 5, Oct. 30, 2009.

functions.[19]  Nor is there any indication in the record before the Court that the entities use the same equipment.  The only evidence that Plaintiff proffers to indicate that BMHCC and Baptist have interrelated operations is shared marketing.  Unlike in *Palmer Donavin*, however, BMHCC and Baptist Tipton are not marketed as "twins" to the public.  Instead, BMHCC markets itself as a health care system with fifteen affiliate hospitals located throughout the Mid-South.[20]

Since the Plaintiff has failed to proffer any evidence to indicate that BMHCC and Baptist Tipton share offices, locations, equipment, or bank accounts, this factor weighs against finding the two entities are a "single employer."

### 2. Common Management

There is no evidence of common management in the record.  In fact, the Plaintiff does not seem to even assert a factual basis for such a finding in his response to the instant Motion. Baptist Tipton has its own Administrator, CEO, and managers, independent of BMHCC.[21] Therefore, this factor also weighs against finding that BMHCC and Baptist Tipton are a "single employer."

### 3. Centralized Control of Labor Relations and Personnel

The Plaintiff's primary argument that BMHCC and Baptist Tipton are an integrated enterprise is focused on centralized control of labor relations.  The Plaintiff contends that both entities use the same legal resources and have the same counsel in the instant lawsuit.

---

[19] *Id.*

[20] Pl.'s Statement of Additional Facts, ¶ 36.  The Plaintiff attached a BMHCC posting at careerbuilder.com for job vacancies.  The Defendant does not dispute the substance of Plaintiff's factual assertion but contends it does not create a genuine issue of material fact.

[21]  Bondurant Aff. 5.

Additionally, Baptist Tipton uses employment policies promulgated by BMHCC and the name BMHCC appears on employment applications.  Baptist Tipton employees participate in BMHCC benefit plans, and McGlasson, the Chief Nursing Officer at Baptist Tipton, consulted with David Rhea, the Human Resources Director at BMHCC, prior to terminating him.

In opposition, the Defendant asserts that the critical inquiry is which entity made the final decision regarding Plaintiff's termination.  Here, the Defendant contends that McGlasson at Baptist Tipton made that decision, not Rhea at BMHCC.  Additionally, the Defendant notes that any common usage of forms or documents such as employment applications are merely a matter of economy rather than evidence of integration.  Further, while Baptist Tipton employees do have the same benefits as those of other BMHCC subsidiaries, the Defendant points out that Baptist Tipton alone is responsible for paying for and administering such benefits.  The Defendant also contends that the fact that both BMHCC and Baptist Tipton have the same legal counsel is irrelevant to a showing of centralized labor relations.

In *Swallows v. Barnes & Noble Book Stores, Inc.*, the Sixth Circuit in examining the labor relations prong of the single employer test noted that "so far as discrimination in hiring and firing on the basis of age or other forbidden characteristics is concerned, the key powers are, naturally those of hiring and firing."[22]  The court also noted that evidence that one entity has "a voice in certain employment decisions" is insufficient to establish that it controls those decisions.[23]  Additionally, courts in this circuit look at such factors as whether the parent promulgates employee policies for the subsidiary's employees and whether the parent issues

---

[22] *Swallows*, 128 F.3d at 995 (quoting *EEOC v. Illinois*, 69 F.3d 167, 171 (7th Cir. 1995)).

[23] *Id*. at 995.

paychecks to the subsidiaries employees to determine whether centralized labor relations exist.[24]

In the record before the Court, there is evidence that weighs in favor of a finding of centralization of labor relations and evidence that does not. For instance, it is clear that BMHCC promulgates employee policies and distributes them to it subsidiaries such as Baptist Tipton. [25] Applications for employment contain the title "Baptist Memorial Health Care System" rather than the name of the subsidiary.[26] There is no evidence in the record as to which name, BMHCC or Baptist Tipton, appears on employee pay checks.

The critical consideration, however, as the Court previously noted is which entity made the hiring and firing decisions. Here, arguably BMHCC had some role in the decision to terminate the Plaintiff. The Court acknowledges that H. Waid Ray, the Associate Corporate Counsel for BMHCC,[27] Barry W. Bondurant, III, the CEO and Administrator of Baptist Tipton,[28] Myra Cousar, the Director of Human Resources at Baptist Tipton,[29] and Charles McGlasson, the

----

[24] *See Woods v. Washtenaw Hills Manor*, No. 07-cv-15420, 2009 WL 2222629, at *16 (E.D. Mich. July 23, 2009); *Takacs v. Hahn Automotive Corp.*, No. C-3-95-404, 1999 WL 33117265, at *7-8 (S.D. Ohio Jan. 4, 1999).

[25] Betz Dep. 16:1-12, Aug. 31, 2009. Paul Betz, the former CEO of Baptist Tipton, testified that employee policies are developed by BMHCC. *Id.*

[26] Exhibit F, Pl.'s Resp. to Def.'s Mot. for Summ. J. The Plaintiff attached an exhibit entitled Defendant's Document Production. Included in this exhibit is Christopher Harrison's application for employment.

[27] Ray Aff. 7, Oct. 30, 2009.

[28] Bondurant Aff. 6.

[29] Cousar Aff. 5, Oct. 30,2009.

Chief Nursing Officer at Baptist Tipton,[30] all averred that Baptist Tipton had the sole and independent authority to fire Plaintiff.  Despite these statements, the Court can not ignore the fact that two days before Plaintiff's termination, McGlasson sent Rhea, the Human Resources Director at BMHCC, an e-mail with a document entitled "terminationbohannon.doc" attached and a message "What do you think?"[31]  A day later and a day before Plaintiff's termination, Rhea responded "Looks good - let's roll with . . . ."[32]  The Defendant contends that Rhea's e-mail to McGlasson is nothing more than mere advice and in no way indicates that McGlasson sought approval to terminate the Plaintiff.

The Court admits that the Sixth Circuit in *Swallows* found that just because Tennessee Technological University had a voice in the employment decisions of its lessee, Barnes & Noble, did not mean it controlled those decisions.[33]  The present case, however, is factually distinct from *Swallows*.  Barnes & Noble effectively leased space from TTU to operate a bookstore on the TTU campus.[34]  Here, Baptist Tipton is a hospital included in a larger system of hospitals, BMHCC.  Additionally, Rhea's use of the phrase "let's," i.e. let us, "roll with" arguably indicates that BMHCC was expressing more than an opinion or voice on Plaintiff's termination. The term "us" indicates that both BMHCC and Baptist Tipton arguably made the termination decision.  The Court, however, acknowledges that after this time Paul Betz upheld Plaintiff's

---

[30] McGlasson Aff. 17, Oct. 27, 2009.

[31] Exhibit F, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[32] *Id.*

[33] *Swallows*, 128 F.3d at 995.

[34] *Id.* at 995-96.

termination decision in a "problem solving process."

In reviewing a motion for summary judgment, the Court must look at the facts in the light most favorable to the Plaintiff.  As such, the Court finds that Rhea's e-mail with the directive "let's roll with" at least implies that McGlasson sought some sort of approval from Rhea the day before terminating the Plaintiff.  Based on Rhea's statement and the timing of the statement, the Court finds these facts evidence centralization of labor relations.  Therefore, the Court finds that this factor weighs in favor of a finding that BMHCC and Baptist Tipton are a "single employer."

As an aside, the Court notes that a similar decision was reached in *Herron v. Baptist Memorial Hospital Corp.* by the Honorable W. Allen Pepper Jr. in the United States District Court for the Northern District of Mississippi.[35]  In *Herron*, the plaintiff asserted an FMLA retaliation claim against both BMHCC and Baptist Desoto.[36]  Just as is the case here, Defendant BMHCC argued that it was entitled to summary judgment because Baptist Desoto was the Defendant's sole employer, not BMHCC.[37]  The court applied the "integrated employer" and "joint employer" tests and found that since the (1) the human resources director at Baptist Desoto consulted David Rhea, the human resources director at BMHCC prior to terminating Plaintiff and (2) because the human resources director at Baptist Desoto admitted that he may contact corporate for clarification purposes, there was a genuine issue of material fact as to whether BMHCC and Baptist Desoto were an "integrated employer."[38]

---

[35] *Herron v. Baptist Memorial Healthcare Corp.*, No. 06-cv-114-p-a, 2007 WL 25799752, at *2 (N.D. Miss. Sept. 4, 2007).

[36] *Id*. at *1.

[37] *Id*.

[38] *Id*. at *2.

*4. Common Ownership and Financial Control*

BMHCC is the sole owner of Baptist Tipton, therefore, common ownership is demonstrated.[39]  As such, this factor weighs in favor of finding that BMHCC and Baptist Tipton are a "single employer."

In summary, the Court finds that two factors, interrelation of operations and common management, weigh against a finding that BMHCC and Baptist Tipton are a single employer and two factors, centralized labor relations and common ownership, weigh in favor of such a finding. Thus, in effect, the factors are evenly split.  The Sixth Circuit, however, has stated that "labor relations is a central concern."  Here, the Court found that labor relations weighs in favor of a finding that BMHCC and Baptist Tipton are a single employer.  Since the labor relations factor is the "central concern" for the Court and because the Court must view the evidence in the light most favorable to the Plaintiff, Defendant's motion for summary judgment must be denied at this stage.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 7th, 2010.

---

[39] *Armbruster*, 711 F.2d at 1338.