IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

———————————————————————————————————

|  |  |  |
|---|---|---|
| WILLARD EARL BOHANNON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 08-2220-STA |
| BAPTIST MEMORIAL | ) | |
| HOSPITAL-TIPTON, and BAPTIST | ) | |
| MEMORIAL HEALTH CARE | ) | |
| CORPORATION; | ) | |
| | ) | |
|     Defendants. | ) | |

———————————————————————————————————

### ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

———————————————————————————————————

Before the Court is Defendants Baptist Memorial Hospital-Tipton and Baptist Memorial Health Care Corporation's Motion for Partial Summary Judgment (D.E. # 66) filed on October 30, 2009. Defendants filed an amended memorandum in support of the instant Motion (D.E. # 67) on November 2, 2009. Plaintiff filed a response in opposition to Defendants' Motion (D.E. # 86) on January 6, 2010. Defendants have filed a reply brief (D.E. # 101) in this matter. For the reasons set forth below, Defendants' Motion is **GRANTED**.

### BACKGROUND

As an initial matter, the Court notes that the Defendants attached a statement of undisputed facts to the instant Motion. Plaintiff responded to Defendants' statement in his response in opposition to Defendants' Motion. In turn, the Defendants responded to Plaintiff's response to their original statement of facts in their reply brief. Local Rule 7.2(d)(3) provides:

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

Here, Plaintiff complies with the letter of the rule, but arguably not the spirit. For instance, in response to paragraph 2 of Defendants' statement, Plaintiff disputes Defendants' assertion of fact and then proceeds to provide the Court with additional information from paragraph 2a through 2u, and 2aa through 2dd. Arguably, a response in this fashion is not responsive to Defendants' assertion of facts. Therefore, the Court will only consider the portions of Plaintiff's response that are material, relevant, and responsive to Defendants' statement of facts. Additionally, Plaintiff includes in effect a separate statement of facts that he entitles "Additional Facts" with his response. Neither the Local Rules nor the Federal Rules of Civil Procedure provide for such a practice. Therefore, the Court will not consider Plaintiff's separate statement of "Additional Facts" for purposes of this Motion.

As to the Defendants' reply to Plaintiff's response, neither the Local Rules nor Federal Rules of Civil Procedure contemplate that the moving party will respond to the non-moving party's response to the statement of undisputed facts. However, the Court also acknowledges that neither the Local Rules nor the Federal Rules of Civil Procedure contemplate that the non-moving party's response will be non-responsive. As such, to the extent the Court considers Plaintiff's additional evidence, the Court will consider Defendants' reply to Plaintiff's response.

The following facts are not in dispute for purposes of this motion unless otherwise noted. Plaintiff Willard Earl Bohannon began working for Defendant Baptist Memorial Hospital-Tipton ("Baptist Tipton") in August 1988 as a paramedic. Defs.' Statement of Undisputed Material

Facts ¶ 1.  On April 4, 2007, Plaintiff had a meeting with Chuck McGlasson, then Chief Nursing Officer of Baptist Tipton, and Myra Cousar, Director of Human Resources at Baptist Tipton, during which McGlasson and Cousar asked Plaintiff if he had been keeping a "super tonic" in his locker.  *Id.* at ¶ 2.  Plaintiff admitted that he had.  *Id.*  Plaintiff does not dispute that such a meeting occurred or that he admitted he kept "super tonic" in his locker.  Plaintiff, however, does contend that the significance of the April 4, 2007 meeting has to be viewed in light of several preceding events.  For instance, Plaintiff alleges that prior to April 4, 2007, he (1) complained in a January 29, 2007 meeting that paramedics were not being paid overtime in accordance with Department of Labor Standards, (2) filed a complaint with the Department of Labor's Wage and Hour Board and gave a formal statement, (3) was interviewed by McGlasson and David Rhea, the Director Human Resources for BMHCC, regarding a sexual harassment incident involving a male EMT-IV and female paramedic, (4) and complained about the vulgar language younger EMT-IVs and paramedics were using in the ambulance service.  Plaintiff also notes that McGlasson and Cousar interviewed his wife, Janice Bohannon, on April 4, 2007.  After the meeting, McGlasson and Cousar immediately took possession of the "super tonic" in Plaintiff's locker, and he was placed on suspension.  *Id.* at ¶¶ 3, 9.

Defendant Baptist Tipton submitted the "super tonic" for an alcohol test, and the results revealed that Plaintiff's "super tonic" had an alcohol content of 23.9%.  *Id.* at ¶10.  Super tonic consists of garlic, onion, cayenne pepper, ginger, horseradish, apple cider vinegar, and eighty proof vodka with the liquid ingredients consisting of one third apple cider vinegar and two thirds

vodka.  *Id*. at ¶ 5.[1]

On April 11, 2007, Plaintiff was terminated for possession of alcohol on Baptist Tipton's premises, a violation of its Fitness for Duty Policy.  *Id*. at ¶ 11, 5.  Plaintiff admits that this was Defendants' purported reason for his termination, but contends it was merely an excuse for Defendants' actual reason.  Additionally, Plaintiff asserts that prohibited alcohol is not defined in Defendants' policy.  Plaintiff's termination was reviewed and affirmed by Paul Betz, the CEO and Administrator of Baptist Tipton.  *Id*. at ¶ 12.

At the time of Plaintiff's suspension and termination, Plaintiff's wife, Janice, was also an employee in the ambulance department at Baptist Tipton.  *Id* at ¶ 7.  Janice had a locker independent from the Plaintiffs, but she did not keep "super tonic" in her locker.  *Id*. at ¶¶ 7-8.  The Plaintiff, however, notes that Janice made the "super tonic," brought it to work, had access to it, and used it at work.

After Plaintiff's employment ended, Kim Hines, a paramedic already employed in the ambulance department, took over Plaintiff's duties as an informal shift lead.  *Id*. at ¶ 13.  The shift lead position did not come with additional pay or benefits.  *Id*.  Plaintiff does not dispute that Kim Hines took over his responsibilities as the informal shift lead.  Plaintiff does, however, allege that while no additional pay accompanied the shift lead position, he did receive priority in selecting his days off, his work assignment, and his workstation or location for each shift.  On

---

[1] Plaintiff does not dispute that these are the contents of super tonic.  Plaintiff, however, contends that the amount of the herbs used in the recipe and how the super tonic prepared is material.

4

January 15, 2009, the ambulance service at Baptist Tipton closed.  *Id*. at ¶ 14.[2]

Plaintiff asserts that Jeb Bradley, a twenty-two year old, was the first paramedic hired after his termination.  Defendants, however, contend that Dean Allen, a forty-five year old, was the first paramedic to be hired after Plaintiff's termination.  Plaintiff also alleges that McGlasson commented that he had been in his job forever.  *Id*. at ¶ 15.

In his Amended Complaint, Plaintiff asserts claims of retaliatory discharge pursuant to the Fair Labor Standards Act, Title VII of the Civil Rights Act, the Tennessee Human Rights Act, the Tennessee Public Protection Act, and Tennessee common law.  Plaintiff also alleges that he was unlawfully discriminated against on the basis of age pursuant to the Age Discrimination in Employment Act and the Tennessee Human Rights Act.  In the instant Motion before the Court, the Defendants assert that no genuine issues of material fact remain as to Plaintiff's ADA and THRA age claims, Tennessee Public Protection Act claim, or request for back pay and/or front pay after January 15, 2009, the date the ambulance service at Baptist Tipton closed.

Defendants first contend that if Plaintiff is entitled to front pay or back pay because of his termination the amount must be tolled on January 15, 2009, the day the ambulance service at Baptist Tipton closed.  The Defendants next assert that the Plaintiff can not show direct evidence or establish a prima facie case of age discrimination under either the ADEA or THRA.  More specifically, the Defendants contend that Plaintiff can not make out the fourth element of his prima facie case, replacement by a person outside his protected class or less favorable treatment than a similarly situated individual outside of his protected class.  Defendants further argue that

---

[2] Plaintiff does not dispute that the ambulance service at Baptist Tipton closed on January 15, 2009.  Instead, Plaintiff adds additional information concerning Kim Hines and Brenda Rivera's employment after the ambulance service at Baptist Tipton closed.

Plaintiff can not show that the basis for his termination, possession of alcohol on Baptist Tipton premises, was pretextual.  Finally, Defendants contend that Plaintiff can not establish a claim under the TPPA because he can not show that retaliation was the sole reason for his discharge.

In response, Plaintiff asserts that any back and front pay he is entitled to should not be limited to January 15, 2009.  Rather, Plaintiff contends that while it is true the Baptist Tipton ambulance service closed, there is no evidence that he would not have continued to be employed by the Baptist system upon its closure.  Plaintiff relies on Defendants' reduction in force policy for this proposition. Additionally, the Plaintiff asserts that he can make out the fourth element of his  prima facie case of age discrimination.  More specifically, Plaintiff contends that Jeb Bradley, a twenty-two year old, was hired as his replacement.  Plaintiff also asserts that Defendants proffered reason for his termination, possession of alcohol, was pretextual because Defendants selectively enforced the Fitness For Duty Policy and disregarded policy language that permitted use of medicinal products containing alcohol.  Finally, Plaintiff contends that he can make out a claim under the TPPA.

In reply to Plaintiff's response to the instant Motion, the Defendants reassert that any front pay or back pay Plaintiff is entitled to must be limited to January 15, 2009.  Defendants admit that Baptist Tipton has a reduction in force policy.  Defendants contend, however, that this policy in no way would have guaranteed Plaintiff employment beyond the ambulance service's closure.  In fact, Defendants contend that it is undisputed that Plaintiff's employment would have ended on January 15, 2009, because there were no paramedic positions open at Baptist Union City or Baptist Memphis at the time.  Defendants also continue to maintain that Plaintiff can not make out the fourth element of his ADEA claim or show that the proffered reason for his

6

termination was pretextual.  Finally, Defendants again assert that Plaintiff can not make out a

claim of retaliatory discharge under the TPPA because he can not show that the sole reason for

his termination was retaliation.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law.[3]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[4]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial."[5]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[6]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[3] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Celotex*, 477 U.S. at 324.

[6] *Matsushita*, 475 U.S. at 586.

verdict.[7]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[8]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[10]  Finally, the "judge may not make credibility determinations or weigh the evidence."[11]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[12]

## ANALYSIS

### A.  Back Pay and Front Pay

#### 1. Back Pay

The Plaintiff seeks to recover back pay under the Fair Labor Standards Act (FLSA) and Age Discrimination in Employment Act (ADEA).  The Defendants contend that even if Plaintiff establishes his claims any back pay award must be capped at January 15, 2009, the date the

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id*. at 251-52 (1989).

[9] *Celotex*, 477 U.S. at 322.

[10] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[12] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

ambulance service at Baptist Tipton closed.  In contrast, the Plaintiff asserts that any limit on his back pay award is inappropriate.  More specifically, the Plaintiff contends that the Defendants maintain a written policy that facilitates the transfer of its employees in the event of a facility closure or reduction in force, such as here.  Therefore, the Plaintiff argues that there is a genuine issue of material fact as to whether Plaintiff would have retained a position within the Baptist system following the ambulance service's closure.

The purpose of a back pay award is to "restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place."[13]  It is improper, however, to award back pay if an employer can show that even if employees had been treated with total fairness they would have been discharged at a later date.[14]

The Defendants cite *Bales v. NLRB* for the proposition that "back pay is appropriately capped or tolled at the time the facility at which the plaintiff works closes."[15]  In *Bales*, four truck drivers were employed by Pacemaker Driver Service, Inc. and their services were leased to Carrier Corporation in Knoxville, Tennessee.[16]  Carrier closed its Knoxville operations when the drivers threatened to unionize.[17]  The four truck drivers sued Carrier for unfair labor practices and sought a back pay award beyond the date Carrier closed its Knoxville operations.[18]  Carrier,

---

[13] *Hawley v. Dresser Indus., Inc*., 958 F.2d 720, 725 (6th Cir. 1992).

[14] *NLRB v. Master Slack & or Master Trousers Corp*., 773 F.2d 77, 83 (6th Cir. 1985).

[15] Defs.' Mot. for Summ. J., 8.

[16] *Bales v. NLRB*, 914 F.2d 92, 93 (6th Cir. 1990).

[17] *Id.*

[18] *Id.*

however, argued that its Knoxville operations would have closed for economics reasons regardless of the unfair labor practice.[19]  The Board determined that Carrier discharged drivers when it redomiciled their trucks and thus it had no obligation to pay back pay beyond that date.[20]  The Sixth Circuit found that the Board's finding was not clearly erroneous.[21]  The court reasoned that

> [t]here was no need for Carrier to adopt a specific policy to terminate drivers when it no longer needed their services at a particular location since Carrier never formally employed them.  It is enough that Carrier has shown that it would have ceased leasing the petitioners' services from Pacemaker and allowed Pacemaker to make the decision as to what happened to the specific employees it had assigned to the account.[22]

Despite Defendants' contentions to the contrary, the Court notes that the underlying circumstances in *Bales* are not exactly analogous to the case at bar.  In *Bales*, Carrier and the truck drivers were not in an employer-employee relationship.  Carrier simply leased their services.  As such, Carrier had no obligation to find the drivers alternative employment when it closed its operations nor did it need to maintain such a policy.  Here, Defendants were not simply leasing Plaintiff's services, and Defendants undisputedly maintained a policy concerning reductions in force.

In *Hill v. Spiegel*, the plaintiff, an executive in a mail order business, alleged that he was

---

[19] *Id.*

[20] *Id.* at 96.

[21] *Id.*

[22] *Id.*

terminated on the basis of his age in violation of the ADEA.[23]  The case was tried before a jury which awarded back pay in favor of the plaintiff.[24]  On appeal, the defendant argued that the jury's award was excessive because it did not take into account the fact that the plaintiff's position was eliminated on October 1, 1976.[25]  The court, however, found that the defendant's argument was unavailing because the plaintiff's replacement continued to work beyond October 1, 1976.[26]  The court did note, however, that plaintiff's award should have been cut off in March 1978, when his entire division was eliminated.[27]

In *Thom v. American Standard, Inc*., an FMLA case, the defendant asked the court to limit a plaintiff's back pay to the date it sold all its operations and terminated its employees.[28] The court noted that while it is true that under *Hill* back pay ends upon an asset sale and termination of all employees, the defendant failed to take into account that employees similarly situated to the plaintiff were rehired after the asset sale.[29]

As noted above, in the present case, the Defendants contend that any back pay award Plaintiff receives should be limited to January 15, 2009, the date the Baptist Tipton ambulance service closed.  In contrast, the Plaintiff asserts a cut off date is inappropriate because he met all

---

[23] *Hill v. Spiegel*, 708 F.2d 233, 235 (6th Cir. 1983).

[24] *Id*.

[25] *Id*. at 238.

[26] *Id*.

[27] *Id*.

[28] *Thom v. American Standard, Inc*., No. 3:07-cv-294, 2009 WL 961182, at *4 (N.D. Ohio Apr. 8, 2009).

[29] *Id*.

of the criteria for a preferred transfer under Defendants' policy.

As a threshold matter, the Court notes that Defendants maintain policies concerning reduction in force and displacement. For instance, the Baptist policy manual states, "on occasion, employees may be displaced due to budgetary considerations or department closings. In such cases, the employees may seek transfer to another position regardless of his/her tenure with Baptist providing he/she meets the job requirements and is good standing at the time."[30] The Reduction in Force Policy also states:

> [i]n the event of a reduction in work force, a Human Resources Representative will work with affected employees who will have the opportunity to apply for any vacant Baptist position for which they are qualified. In such cases, employees will receive preference over external candidates whenever possible. If alternative placement is not obtained prior to displacement, the former employee may continue to seek employment opportunities within Baptist. Employees who are re-employed within any Baptist entity may be eligible for service bridging.[31]

Here, in essence, the Plaintiff seems to assert that any back pay award he might receive should not be cut off on January 15, 2009, because he could have potentially transferred within the Baptist organization. To support this argument, Plaintiff notes that both Kim Hines and Brenda Rivera, paramedics at Baptist Tipton, continued their employment with the Baptist organization after January 15, 2009.

Kim Hines, a full time paramedic at Baptist Tipton prior to its closure, was on FMLA leave on January 15, 2009.[32] As such, she was not terminated when the ambulance service

---

[30] Baptist Policy Manual, *Promotions, Demotions, Lateral Transfers*, IV(A).

[31] Baptist Policy Manual, *Reduction in Work Force*, V.

[32] Cousar 2d. Decl. ¶ 11, Feb. 2, 2010.

closed.[33]  On May 18, 2009, a paramedic position became available in the emergency room at Baptist Tipton.[34]  Hines applied for the position and received it on June 3, 2009.[35]

Brenda Rivera was employed with Baptist Tipton as a PRN prior to the ambulance service's closure.[36]  Rivera is presently employed at Baptist Memphis in the emergency department.[37]  This is a position she has held since July 2008.[38]

The Court finds the applicability of Baptist policies to Hines and Rivera unpersuasive. Hines was not transferred from her position in the ambulance service to her current position in the emergency department when the ambulance service closed.  Instead, Hines applied for a position that became available in the emergency department approximately four months after the service closed.  Therefore, Hines new position is not arguably a product of Baptist's reduction in force policy.[39]  Additionally, Rivera was already employed with Baptist Memphis when the Baptist Tipton ambulance service closed.  While the Court acknowledges that Rivera testified that she got the job at Baptist Memphis in fear the ambulance service would close, Rivera could

---

[33] *Id.*

[34] *Id.* at ¶13.

[35] *Id.* at ¶ 14.

[36] Rivera Decl. ¶ 4, May 1, 2009.

[37] *Id.* at ¶ 5.

[38] *Id.*

[39] The Court notes that Paul Betz did testify that "an employee will not lose their accrued benefits if they bridge back into the system within six months."  Betz Dep. 117:18-19, Aug. 13, 2009.  Hines, however, was not terminated on January 15, 2009 when the ambulance service closed, since she was on FMLA leave.  As such, from the record it is unclear to the Court if Hines was even terminated prior to applying for the position in the emergency department in May 2009.

not have possibly transferred under the terms of the reduction in force policy since she was employed prior to the service's closure.[40]  As such, Plaintiff has failed to proffer any evidence to indicate that any of his fellow employees actually transferred under the terms of Baptist's policies.

As an additional matter, the Plaintiff also disregards the fact that even if he could have transferred under the policies, there were not any paramedic positions available at Baptist Memphis or Baptist Tipton until May 2009.[41]  Plaintiff also fails to acknowledge that he considered available positions in Union City, Fayette County, and Memphis too far to drive.[42] The Plaintiff also seems to contend that he could have transferred to a different position under the terms of Baptist's policies.  The record before this Court, however, fails to give any indication that Plaintiff would have accepted a non-paramedic position.  Thus, the Court finds this argument unpersuasive as well.

Ultimately, the Court finds that like in *Hill*, Baptist Tipton closed Plaintiff's division, the ambulance service.  There is no indication from the record that although Defendants maintain policies concerning transfers as a result of a reduction in force that any of Plaintiff's fellow employees received such transfers.  Thus, this case is not analogous to the situation in *Thom*.  As such, the Court finds that the Plaintiff has failed to proffer evidence to show that he would have continued to be employed with Defendants beyond January 15, 2009, if not for their alleged

---

[40] Rivera Dep. 111:10-15, Aug. 25, 2009.

[41] Wolfe Decl. ¶ 9, Feb. 3, 2010.

[42] Bohannon Dep. 234:17-21.  The Court acknowledges, however, that Bohannon also testified that he worked in Memphis for six months following his employment with Pro Med.  *Id*. at 237:15-23.

FLSA and ADEA violations.  Therefore, any back pay award Plaintiff may receive will be limited to January 15, 2009.  Defendants' Motion as to Plaintiff's back pay award is **GRANTED**.

     *B. Front Pay*

     "Front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement."[43]  Courts generally award front pay when reinstatement is inappropriate or infeasible.[44]  Thus, the remedies of reinstatement and front pay are alternative, rather than cumulative.[45]  Determination of when to award front pay is within the discretion of the trial court.[46]  The Sixth Circuit has stated that the following factors are relevant in determining whether an award of front pay is appropriate:(1) the employee's future in the position from which he was terminated; (2) his work life expectancy; (3) his obligation to mitigate damages; (4) the availability of comparable employment opportunities and the time reasonably required to find substitute employment; (5) the discount tables to determine the present value of future damages; and (6) other factor that are pertinent in prospective damage awards.[47]

     The Defendants assert that since Plaintiff had no expectation in continued employment with Baptist Tipton beyond January 15, 2009, his front pay award should be capped as of that

---

[43] *Pollard v. E.I. Dupont de Nemours, Inc.*, 338 F.Supp.2d 865, 881 (W.D. Tenn. 2003).

[44] *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1234 (6th Cir. 1996).

[45] *Id.*

[46] *Id.*

[47] *Id.*

date.  Defendants in effect argue that Plaintiff is not entitled to any award of front pay.  In contrast, the Plaintiff asserts that both Kim Hines and Brenda Rivera continued their employment with the Baptist organization after the ambulance service's closure due to the reduction in force policy.  As such, the Plaintiff contends that at a minimum he is entitled to "front pay . . . at least as long as the system-wide tenure of all of those employees."[48]

In *Sandlin v. Corporate Interiors, Inc*., the Tenth Circuit noted that "reinstatement is not possible and front pay is inappropriate if a defendant company has ceased doing business."[49] Front pay is also inappropriate when the plaintiff's position is eliminated.[50]  The Sixth Circuit arguably acknowledged this general rule in *Lewis v. Quaker Chem. Corp*., an unpublished table decision.[51]

In the case at bar, despite Plaintiff's contentions to the contrary, he had no expectation of continued employment in his position at Baptist Tipton beyond January 15, 2009.  Therefore, reinstatement in his particular position is impossible.  While Defendants do maintain a policy for transferring employees within the Baptist organization due to a reduction in force, the Court previously noted that Plaintiff has failed to proffer any evidence to indicate that any of his fellow paramedics maintained their employment as a result of this policy.  Additionally, there were no paramedic positions available in Plaintiff's surrounding area at the time Baptist Tipton's

---

[48] Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., 23.

[49] *Sandlin v. Corporate Interiors, Inc*., 972 F.2d 1212, 1215 (10th Cir. 1992).

[50] *Tennes v. Massachusetts Dept. of Revenue*, 944 F.2d 373, 381 (7th Cir. 1991).

[51] *Lewis v. Quaker Chem. Corp*., Nos. 99-5405, 99-55482, 2000 WL 1234356, at *10 (6th Cir. Aug. 24, 2000). The court noted "Quaker also asserts that because Lewis's position was eliminated, front pay is inappropriate for a position that no longer exists." *Id*.  The court then cited to two cases in the Third and Seventh Circuit for this proposition, respectively.  *Id*.

ambulance service closed, and Plaintiff testified he was unwilling to drive long distances even if they had been available.

The Court further notes that while Plaintiff's company did not close on January 15, 2009, i.e. Baptist Tipton Hospital remained open, Plaintiff's division in effect did.  An ambulance service operated by Baptist Tipton no longer existed after that date.  Therefore, Plaintiff's position was undisputedly eliminated on that date.  The Court acknowledges that the Baptist organization continued to employ paramedics in other hospital locations.  The front pay factors, however, focus on the individual plaintiff and his individual circumstances.  As such, the Court finds that since Plaintiff would have had no expectation of continued employment in his position beyond January 15, 2009, no other paramedic positions were available in his surrounding areas as of that date, and since Plaintiff admitted that he was not willing to drive to them even if they had been available, any front pay award he might receive should be cut off as of January 15, 2009.  Since front pay is awarded for the period in between judgment and reinstatement, Plaintiff in effect is not entitled to a front pay award. Therefore, Defendants' Motion is **GRANTED** as to Plaintiff's front pay award.

### B.  Age Discrimination under the ADEA

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . ."[52]  A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence.[53]  Direct evidence of

---

[52] 29 U.S.C. § 623(a)(1).

[53] *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.[54]  Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.[55]  In *Gross v. FBL Fin. Serv., Inc*., the Supreme Court recently emphasized that with both direct and circumstantial evidence, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but for' cause of their employer's adverse action."[56]

In the present case, the Plaintiff does not seem to contend that he can show direct evidence of age discrimination.  For instance, Plaintiff does not brief the applicable standard but rather simply sets forth the elements of a prima facie case of age discrimination using circumstantial evidence.  As such, the Court will only address the latter.

To set forth a prima facie case of age discrimination using circumstantial evidence, a plaintiff must establish four elements of the *McDonnell Douglas* test: (1) that he was a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position held; (4) and that he was replaced by someone outside of the protected class.[57]  Here, the Defendants concede that the first three elements are met.  As such, the critical inquiry for the Court is whether Plaintiff has proffered evidence to show that he was replaced by someone outside the protected class.

_____

[54] *Id*. (quoting *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 570 (6th Cir. 2003)(internal citations omitted)).

[55] *Id*.

[56] *Id*. (quoting *Gross v. FBL Fin. Serv., Inc*., 129 S.Ct. 2343, 2350 (6th Cir. 2009)).

[57] *Id*. at 622.

The Defendants contend that the Plaintiff can not show that he was replaced by someone outside of his class because (1) Kim Hines, an employee already working for Baptist at the time of Plaintiff's termination, took over Plaintiff's shift supervisor duties and thus he was not replaced and (2) no one was hired to fill Plaintiff's position upon his termination.  In response, Plaintiff asserts that (1) it would be reasonable for a jury to conclude that Kim Hines did not just absorb Plaintiff's duties but in effect received a promotion and (2) Jeb Bradley, a twenty-two year old, was hired as his replacement.

The Sixth Circuit has stated that

> [a] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

In the case at bar, Kim Hines was employed as a full time paramedic in the ambulance service department at Baptist Tipton prior to and following Plaintiff's termination.  After Plaintiff's termination, Hines took over Plaintiff's duties as an informal shift lead.[58]  As such, Plaintiff was not "replaced" by Kim Hines, an existing Baptist employee.

Plaintiff also attempts to show that he was replaced by someone outside of his protected class by asserting he was replaced by Jeb Bradley, a twenty-two year old.  While it is true that Defendant Baptist Tipton hired Jeb Bradley, as a PRN in July 2007 and that he was outside of the protected class, i.e. younger than 40, Plaintiff completely ignores the fact that the Defendant

---

[58] Bohannon Dep. 158:20-25, May 4, 2009. Bohannon was asked "Now, whom do you believe replaced you at Baptist?" *Id*. at 19-20.  He answered "Kim Hines."  *Id*. at 21.

hired Dean Allen, a forty-five year old, as a PRN in May 2007.[59]  Therefore, if Plaintiff was replaced by anyone, he was replaced by Dean Allen in May 2007, not Jeb Bradley in July 2007.

The Court notes that in age discrimination cases such as this, the fourth prong of Plaintiff's prima facie case is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person.[60]  In *Grossjean v. First Energy Corp.*, the Sixth Circuit established a bright line rule for determining when a person is significantly younger.  In *Grossjean*, the court noted "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant."[61]  Here, Plaintiff was sixty years old at the time of his termination.  Allen was forty-five at the time of his hiring, and therefore a member of the protected class.  Under the bright line rule established in *Grossjean*, Allen was significantly younger than Plaintiff at the time of his hire, i.e. more than six years Plaintiff's junior. Therefore, the critical question for the Court is whether or not Allen replaced the Plaintiff.

The Defendants point out that both Allen and Bradley were hired only as part-time paramedics, PRNs, whereas Plaintiff was a full-time paramedic with benefits. As such, the Defendants seem to contend that Plaintiff, a full-time employee, was not replaced by either Allen or Bradley, mere part-time paramedics.

As the Court noted above, "a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."  Here, Allen was hired as a PRN.  According to

---

[59] Cousar 2d. Decl. ¶ 9-10.

[60] *Grossjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

[61] *Id.* at 340.

20

Myra Cousar, the Director of Human Resources at Baptist Tipton, a PRN works on an "as needed" basis.[62]  As such, PRN's do not have a set number of hours and their hours fluctuate.[63] Plaintiff, on the other hand, was employed in a full-time paramedic position. While Plaintiff and Allen were both employed as paramedics and arguably performed similar tasks, Allen could not have been "hired to perform Plaintiff's duties" since he was only employed "as needed." Additionally, the Plaintiff himself testified that Kim Hines took over some of his duties upon his termination.  Therefore, Allen could not possibly have been hired to perform Plaintiff's duties. As such, the Court finds that the Plaintiff has failed to show that anyone was hired to replace him upon his termination.

While the Plaintiff has failed to show that he was replaced by a non protected person, the Plaintiff can also make out a prima facie case of age discrimination by showing in addition to the first three elements, that "a comparable non-protected person was treated better."[64]  The "comparable" must be similarly-situated in all respects to the plaintiff.[65]  The Sixth Circuit has stated that to be similarly situated the comparable must:

> have dealt with the same supervisor, have been subject to the same standards and have engaged in conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.[66]

Here, Plaintiff contends the he is similarly situated to Janice Bohannon, his wife and a fellow

---

[62] Cousar Dep. 18:24-19:1.

[63] *Id*. at 19:4-7.

[64] *Mitchell v. Toldeo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992).

[65] *Id*. at 583.

[66] *Id*.

paramedic at Baptist Tipton.  Plaintiff asserts that his wife, a forty-five year old, also brought the super tonic to work and drank it while on the job.  Plaintiff's wife, however, was not terminated. As such, Plaintiff contends that he was treated less favorably than a similarly situated employee. In opposition, the Defendants assert that Plaintiff was not terminated for drinking the super tonic but rather for possessing alcohol, i.e. the super tonic, in his locker in violation of the Fitness for Duty Policy.  Defendants contend that there is no evidence in the record to indicate that Janice Bohannon kept super tonic in her locker, thus she did not engage in the same conduct as Plaintiff and is not similarly situated to him.

        As an initial matter, the Court notes that it makes no determination that Plaintiff's super tonic constitutes alcohol as defined by Defendants' Fitness for Duty Policy.  Any such determination at this stage would be inappropriate and premature.  For the purposes of its analysis here, however, the Court, will refer to super tonic as alcohol only in the context of Plaintiff's purported policy violation.

        The parties do not seem to dispute that both Plaintiff and his wife had the same supervisor and were subject to the same standards.  Therefore, the relevant inquiry for determining whether they are similarly situated is whether they engaged in the same conduct. The Sixth Circuit has stated that "for the conduct to be the same without such differentiating or mitigating circumstances that would distinguish it or the employer's treatment of it, it must be of comparable seriousness, i.e. similar in kind and severity."[67]

        Here, Plaintiff was allegedly terminated for possessing alcohol, super tonic, in his locker.

_____

[67] *Johnson v. Interstate Brands Corp.*, No. 08-6387, 2009 WL 3583397, at *40 (6th Cir. Nov. 3, 2009).

It is undisputed that both Plaintiff and his wife admitted to consuming super tonic at work.  It is also undisputed that Janice physically brought the super tonic to Baptist Tipton and put it in Plaintiff's locker.[68]  McGlasson, the Chief Nursing Officer, testified that Rebecca Moss accused both Plaintiff and Janice of taking super tonic at work.[69]  Therefore, the only distinction between Plaintiff and Janice's conduct is that Plaintiff kept the super tonic in his locker, rather than in Janice's.  As noted above, the Defendants contend that this critical distinction makes the two not similarly situated.  The Court agrees although it is a close call.

The Plaintiff primarily argues that he is similarly situated to his wife based on what can be best characterized as a  constructive possession theory.  Plaintiff asserts "it is ludicrous to think that storage alone would deprive Janice Bohannon of her interest in, and possession of the super tonic."[70]  Based on this constructive possession theory, Plaintiff contends that he was terminated for possessing the super tonic, whereas Janice was not.

The Court, however, declines to follow the logic of Plaintiff's analysis.  Black's Law Dictionary defines the "act of possession" as "(1) the exercise of physical control over a corporeal thing, moveable or immovable, with the intent to own it or (2) conduct indicating an intent to claim property as one's own."[71]  Here, it is undisputed that Plaintiff, not Janice, had "physical control" over the super tonic, since it was kept only in his locker.  Additionally, Defendants' Fitness for Duty Policy specifically states that "possession of alcohol at work . . . on

---

[68] J. Bohannon Dep. 133:9-20 (May 27, 2009).

[69] McGlasson Dep. 88:8-22 (May 5, 2009).

[70] Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., 26.

[71] Black's Law Dictionary (8th ed. 2004).

the facilities premises including in vehicles or lockers" is a terminable offense.  Plaintiff, not Janice, was the only one of the two to actually violate this particular portion of the Fitness for Duty Policy.  As such Plaintiff did not engage in conduct "similar in kind and severity" to Janice and therefore is not similarly situated to her in this regard.

The Plaintiff also argues that he is similarly situated to Janice because both "brought the tonic to work and both used it at work."[72]  As an initial matter, the Court notes that both Plaintiff and Janice testified that they admitted to using super tonic at work.  The Court further notes that under Defendants' Fitness for Duty Policy ingesting alcohol at work is a terminable offense.  Therefore, both Plaintiff and his wife were arguably in violation of Defendants' policy.  Plaintiff, however, was not terminated for drinking super tonic at work, but rather possessing it in his locker, which Janice did not do.

The Sixth Circuit does not require the conduct at issue to be identical in every respect, it just must be comparable in kind and severity.  For instance, in *Clayton v. Meijer, Inc*., the Sixth Circuit found that the plaintiff was not similarly situated to another employee who violated the same workplace safety policy, because the plaintiff's violation resulted in severe injuries to another employee.[73]  Furthermore, a court in this district has noted that "violations of different company policies do not necessarily support an inference that employees are similarly situated, particularly where one violation is considered more serious than another."[74]

Here, Plaintiff and Janice both admitted to McGlasson that they were consuming super

---

[72] Pl.'s Resp. to Defs.' Mot. for Partial Summ. J., 26.

[73] *Clayton v. Meijer, Inc*., 281 F.3d 605, 610-11 (6th Cir. 2002).

[74] *Bobo v. UPS, Inc*., No. 08-cv-2238, 2009 WL 2905580, at *4 (W.D. Tenn. Sept. 2, 2009)(citing *Johnson v. Ready Mixed Concrete Co*., 424 F.3d 806, 811 (8th Cir. 2005)).

tonic at work.  As such, both arguably admitted to violating the alcohol consumption portion of

the Fitness for Duty Policy.  This, however, is where their similarity ends.  Plaintiff was the only

one to be found with super tonic in his locker.  This is the offense that McGlasson was

concerned with.  McGlasson testified that he did not ask Plaintiff to take a breathalyser[75] and he

had never seen the Plaintiff take the super tonic "in any way, form, or fashion."[76]  As such,

Defendants only had physical evidence of Plaintiff's possession of the super tonic, not his actual

use.  This is also true of Janice.  The Court finds that Plaintiff and Janice are not similarly

situated, and he has failed to make out his prima facie case of age discrimination under the

ADEA.  Therefore, Defendants' Motion as to this claim is **GRANTED**.

    C.  Tennessee State Law Claims

    As an initial matter, the Plaintiff has also asserted an age discrimination claim under the

Tennessee Human Rights Act (THRA).  The THRA provides that an employer may not lawfully

"fail or refuse to hire or discharge any person or otherwise to discriminate against an individual

with respect to compensation, terms, conditions, or privileges of employment because of such

individual's . . .age."[77]  Tennessee courts often analyze age discrimination claims brought under

the THRA utilizing federal authority interpreting the ADEA.[78]  For instance, in order to establish

employment discrimination under both the ADEA and the THRA, the plaintiff must either

present direct evidence of discrimination or introduce circumstantial evidence that would allow

---

[75] McGlasson Dep. 96:9-10.

[76] *Id*. at 110:2-3.

[77] Tenn. Code Ann. § 4-21-401(a)(1).

[78] *Brennan v. Tractor Supply Co.*, No. 05-6487, 2007 WL 1296032, at *6, n.6 (6th Cir. May 2, 2007).

an inference of discriminatory treatment in accordance with the *McDonnell Douglas* framework. Since the Court has already determined that Plaintiff can not make out a prima facie case under the ADEA, Plaintiff's age discrimination claim under the THRA must also fail.  As such, Defendants' Motion as to Plaintiff's age discrimination claim pursuant the THRA is **GRANTED**.

The Defendants also assert that no genuine issue of material fact exists as to Plaintiff's retaliatory discharge claim under the Tennessee Public Protection Act, TPPA, and as such summary judgment is warranted as to this claim.  More specifically, the Defendants argue that Plaintiff can not show that retaliation in violation of the TPPA was the sole reason for his discharge.  In response, the Plaintiff contends that he has "produced ample evidence to establish a causal nexus between his protected activity and his termination."[79]

To prevail under the TPPA, the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about illegal activities as defined under the TPPA; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and termination.[80]  The term "illegal activities" is statutorily defined as "activities that are in violation of the criminal or civil code of this state or the United States or [any] regulation intended to protect the public health, safety, or welfare."[81]

After the employee has established a prima facie case of retaliatory discharge, the burden

---

[79] Pl.'s Resp. to Defs.' Mot. for Summ. J., 28.

[80] *Franklin v. Swift Trans. Co., Inc*., 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006)(citing Tenn. Code Ann. § 50-1-304)).

[81] *Id*. (citing Tenn. Code Ann. § 50-1-304(a)(3)).

shifts to the employer to assert a "legitimate, non-pretextual reason for the employee's discharge."[82]  If the employer meets its burden, the burden shifts back to the employee to prove that the employer's explanation is pretext.[83]  In proving pretext, the employee "must present specific admissible facts, which realistically challenge the defendant's stated reasons."[84]

With respect to the second element, the Tennessee Court of Appeals has largely defined what qualifies as a "plaintiff's refusal to participate in, or to remain silent about, illegal activities" for purposes of the TPPA.  A whistleblower must show more than that the employer has violated a law or regulation.[85]  The employee must show that his or her "efforts to bring to light an illegal or unsafe practice furthered an important public policy interest" rather than the employee's personal interest.[86]  The Tennessee courts have held that an employee's report of "a serious infraction of the law to either company management or law enforcement officials" will qualify for protection under the Act.[87]  While it is not necessary to report illegal activities directly to law or regulatory enforcement officials, a whistleblower must "make a report to some entity other than the person or persons who are engaging in the allegedly illegal activities."[88]

---

[82]   *Wooley v. Madison County, Tennessee*, 209 F. Supp. 2d 836, 844 (W.D. Tenn. 2002) (J. Gibbons) (citations omitted).

[83]  *Id.*

[84]  *Id.*

[85]  *Collins v. AmSouth Bank*, 241 S.W.3d 879, 885 (Tenn. Ct. App. 2007) (citing *Guy v. Mut. of Omaha Ins. Co.,* 79 S.W.3d 528, 538 (Tenn. 2002); *Franklin,* 210 S.W. 3d at 531.

[86]  *Collins*, 241 S.W.3d at 885 (citations omitted).

[87]  *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 371 (Tenn. Ct. App. 2005).

[88]  *Id.*

Where the "offending supervisor" and company management are the same person(s), an employee's report of illegalities is likewise protected under the Act.[89]  However, the Tennessee court have recently acknowledged that the question of "whether a statutory cause of action is available to a plaintiff whose employment was terminated solely for refusing to participate in an illegal activity where the plaintiff did not report that activity" remains open under Tennessee law.[90]

Here, the parties do not seem to dispute that Plaintiff can make out the first three elements of his TPPA claim.  Plaintiff was an employee of the Defendants, he filed a complaint with the Department of Labor's Wage and Hour Board and gave a formal statement concerning paramedics' overtime pay, and he was terminated on April 11, 2007.  Therefore, the critical question is whether Plaintiff can show an exclusive causal relationship exists between his refusal to remain silent and his termination.  Based on the record before the Court, there is clear evidence that Plaintiff was terminated for possessing alcohol, i.e. super tonic, in his locker in violation of the Fitness for Duty Policy.  As such, Plaintiff can not possibly demonstrate that he was terminated solely because of his refusal to remain silent about alleged THRA and FLSA violations.  This fact alone requires summary judgment on Plaintiff's TPPA claim.  Therefore, Defendants' Motion as to this claim is **GRANTED**.

<u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is

---

[89] *Id.* at 371 n. 1.

[90] *Gossett v. Tractor Supply Co., Inc.*, 2009 WL 528924, *7 (Tenn. Ct. App. Mar. 2, 2009) (opining that the issue "must be left for another day").

**GRANTED**.

      **IT IS SO ORDERED**.

                              **s/ S. Thomas Anderson**
                              S. THOMAS ANDERSON
                              UNITED STATES DISTRICT JUDGE

                              Date: May 7th, 2010.